# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MATTHEW J. CHANNON,

    Plaintiff,

    vs.                                        1:18-cv-00596-WJ-KBM

JEFF TAVANGAR, SHELLEY BACA,
JENNIFER IRELAND, ARMADA GROUP, INC.,
NATALIE GANN, TP-LINK RESEARCH
AMERICAN CORPORATION,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING ARMADA DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon a Motion to Dismiss for Failure to State a Claim filed by Armada Group, Inc., Shelley Baca, Jennifer Ireland, and Jeff Tavangar (the "Armada Defendants"), on August 25, 2018 (**Doc. 10**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED.**

## BACKGROUND

Plaintiff, proceeding *pro se* in this civil action, pled not guilty to, and was later convicted of, five counts of Wire Fraud in this Court. *See United States of America v. Matthew Channon*, 1:13-cr-00966-JCH/KK. The indictment was filed in that criminal case on March 27, 2013. Plaintiff was convicted on January 22, 2016, and the original criminal judgment was entered on November 4, 2016.

Defendant Armada locates individuals who provide technical services and provides their services to tech companies. Plaintiff is apparently an iOS application developer, who entered into a contract with Armada to provide his technical services to TP-Link. The remaining Armada Defendants, Tavangar, Baca, and Ireland, are employees or officers of Armada.

This case is before the Court on diversity jurisdiction. Plaintiff asserts the following California state law claims:

  Count 1: Violation of Cal. Lab. Code. 432.7(a) (against all Defendants)
  Count 2: Interference with Contractual Relations (Against TP-Link)
  Count 3: Interference with Contractual Relations (against Armada)
  Count 4: Breach of Contract (against TP-Link)
  Count 5: Breach of Contract (against Armada)
  Count 6: Unconscionable Business Practices (against all Defendants except Natalie Gann and TP-Link)
  Count 7: Civil Conspiracy (against all Defendants)

  **A.**  **<u>Plaintiff's Allegations</u>**.

The following are allegations from Plaintiff's complaint, unless noted otherwise. Defendant Armada sent Plaintiff an offer letter on June 25, 2015, to start work at TP-Link's site in San Jose, California. After accepting the offer that day, Plaintiff agreed to undergo a background check and references check. Plaintiff asserts he complied with the request and furnished "a substantial amount of requested information." Plaintiff started working on-site at TP-Link that day.

After conducting a background check, the Armada Defendants apparently learned that there were pending felony charges against Plaintiff in this Court. Plaintiff received a number of calls from Defendant Shelly Baca on or about July 2, 2015, regarding the New Mexico criminal charges.

Plaintiff agreed to a conference call with Defendants Jeff Tavangar and Shelley Baca that day. Plaintiff recorded the call. During the call, Defendants Tavangar and Baca asked for

2

additional details regarding Plaintiff's pending charges. Plaintiff stated he had not been convicted of anything and recited to them California Labor Code 432.7(a). Plaintiff explained that he didn't disclose the pending charges prior to employment because he had only been asked if he had any convictions, and he stated he had no convictions.

Defendant Tavangar stated on the call that the charges were a surprise, and that he had no choice but to consult with Defendant TP Link. Defendant Tavangar said that Armada was obligated under the contract to share the information with TP-Link. Defendant Tavangar also stated that Plaintiff is not an employee of Armada, and that Armada had contracted with Plaintiff's company, Loitery, LLC, not Plaintiff individually. Defendant Tavangar stated that he and Armada would consult with TP-Link and tell Plaintiff how they would proceed.

Plaintiff returned to work on July 2, 2015 and continued to work on-site at TP-Link. On July 14, 2015, Plaintiff was called into a meeting with Defendants Gann and Ireland, directed to the leave the company laptop at his desk, and was fired without explanation. Plaintiff was allowed to gather his personal belongs and directed to leave his keys and leave the work-site. Later that day, Plaintiff received an email from Defendant Ireland, with a carbon-copy to Defendant Baca, stating "in follow up to our meeting with TP-Link HR, they have decided to terminate your engagement effective immediately. As such, your agreement with the Armada Group is terminated effective today."

Plaintiff alleges he was hired at rate of $105 hour, with a contract length of 7 months, for a sum of $124,320. He alleges that TP-Link could have hired him at any point as an employee, provided they paid Armada a fee. In fact, he alleges that he was working as a full-time employee for Defendant TP-Link and an "implicit employment contract" existed between them.

Plaintiff alleges that Defendants fired him for having pending criminal charges.

3

B. **Express Contracts**.

The Armada Defendants attached two express contracts to their Motion to Dismiss. Armada and TP-Link entered into a "Client Agreement" on June 9, 2015, in which Armada agreed to locate technical personnel to provide services to TP-Link. **Ex. A.** Attached to that agreement was an Exhibit A, a "work assignment", signed by Armada and TP-Link on June 9, 2015, providing that Armada would provide Plaintiff, Matt Channon, for services including "architect, design, and develop applications for the iPhone platform" from approximately June 29, 2015 to January 1, 2016, for 1001 hours at $140 per hour. **Ex. A, p. 7.**

On June 25, 2015, Armada and Plaintiff's limited liability company, Loitery, entered into a "Supplier Agreement." The Supplier Agreement provided: "Armada's business is locating technical services personnel for various clients, including the client (hereinafter "Client") listed in any Purchase Order (exhibit A) executed by Armada and Supplier [Loitery] and attached to this Agreement, to provide technical services to Client according to the Client's Specifications." It further provided: "Whereas Armada and Supplier wish to enter into an Agreement pursuant to which Supplier will introduce technical services personnel candidates to Armada and Armada may submit said technical services personnel to provide their services to Client." **Ex. B, p. 1.**

C. **Procedural Posture.**

The Court granted Plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. 1915(a). *See* **Doc. 3, 5.** The Armada Defendants (Armada Group, Inc., Jeff Tavangar, Shelley Baca, and Jennifer Ireland) filed this Motion to Dismiss on August 25, 2018, arguing that Plaintiff failed to state a claim as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because this is a diversity case based on California law, this Court must ascertain and apply California law. In doing so, the Court must either follow the decisions of the California Supreme Court or attempt to predict what the California Supreme Court would do. *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

Although the express contracts are not attached to the complaint or the motion to dismiss, the Court may consider these contracts as they are referred to in the complaint, are central to the Plaintiff's claims and the parties do not dispute their authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *cited in Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (if complaint refers to a document that is crucial to the

plaintiff's claim, the defendant may file an indisputably authentic copy to be considered on a motion to dismiss). Therefore, the Court may consider the contracts and need not convert this matter to a summary judgment motion under Fed. R. Civ. P. 56.

Moreover, the Court need not accept as true legal conclusions or factual allegations that are contradicted by a properly-considered document, such as the contracts here. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true."); *see also Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1368 (D.N.M. 2012) ("[I]f the documents central to a plaintiff's claim contradict the allegations of the amended complaint, the documents control and [the] Court need not accept as true the allegations in the [ ] complaint.").

## DISCUSSION

I. **Count I: Cal. Lab. Code 432.7(a) .**

Plaintiff alleges that Defendants violated Cal. Lab. Code. 432.7(a) by terminating him based on a pending charge that had not *yet* become a conviction.

Section 432.7(a) provides that an employer may not utilize (including in hiring or termination) any record of arrest or detention that did not result in a conviction. This section also provides: "Nothing in this section shall prevent an employer from asking an employee or applicant for employment about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending trial." Section 432.7(a). *Pitman v. City of Oakland* reasoned that an

6

individual only has a cause of action under this section if the arrest ends up as a non-conviction. 197 Cal. App. 3d 1037, 1044, 243 Cal. Rptr. 306, 309 (Ct. App. 1988).

Thus, *Pitman* and a line of cases following it hold that an individual does not have a cause of action when he or she was fired while charges were pending and the individual was ultimately convicted. *Id.*; *Pierce v. Kiesewetter*, 2007 WL 4427445, at *6 (Cal. Ct. App. Dec. 19, 2007) (unpublished) (plaintiff unable to survive summary judgment where evidence shows arrest ultimately led to conviction, even though plaintiff was terminated before he was convicted); *Corona v. Target Corp.*, No. C-10-2611 RMW, 2010 WL 3221866, at *2 (N.D. Cal. Aug. 13, 2010) (plaintiff was terminated. court noted "if a conviction results, then plaintiff's claim will be dismissed."); *Payne v. Farmers Ins. Co.*, 2015 WL 7354436, at *4 (Cal. Ct. App. Nov. 20, 2015) (unpublished). This is based on the purpose of the statute, which is to protect individuals who were not convicted of a crime. *Piutau v. Fed. Express Corp.*, 114 F. App'x 781, 782 (9th Cir. 2004) ("The statute denies protection to employees who are convicted of a crime.").

Here, Plaintiff admits in his complaint that he was convicted after he was terminated. Therefore, the Court concludes that Plaintiff fails to state a claim as a matter of law for Count I.

*Piutau v. Fed. Express. Corp.*, 114 F. App'x 781, 782 (9th Cir. 2004) (unpublished), cited by Plaintiff, is not on point. In *Piutau*, the plaintiff was fired after the defendant learned he had pending charges, but was later acquitted. Here, Plaintiff was convicted.

Therefore, **Count I** is **DISMISSED WITH PREJUDICE** as to the Armada Defendants.

## II.   Count III: Interference with Contractual Relations (against Armada).

Plaintiff argues that Defendant Armada intentionally interfered with his contract with TP-Link. Plaintiff does not allege that there was a written contract between him and TP-Link. Rather,

Plaintiff argues there was an "implicit employment contract" between him and TP-Link, and Armada interfered with that contract by "firing" Plaintiff.

Under California law, to state a cause of action for intentional interference with contractual relations, a plaintiff must plead:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). Moreover, "a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587, *quoted in Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148, 95 P.3d 513, 517 (2004).

Plaintiff solely argues in his response that although he was classified as a contractor, TP-Link in fact treated him as an employee, and therefore an "implicit employment contract" existed. Plaintiff states that an employment contract existed because he was in fact working as a full-time employee for Defendant.

  A. <u>**No implied contract existed between Plaintiff and TP-Link as a matter of law**</u>.

Initially, Plaintiff's claim under Count III fails because he has not shown that there was a valid implied contract between Plaintiff and TP-Link. As a matter of law, the Court doubts that an implied employment contract can form between Plaintiff and TP-Link when the relationship between the parties was already governed by express contracts.

"There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. The express term is controlling even if it is not contained in an integrated employment contract." *Halvorsen v. Aramark Unif. Servs., Inc.*, 65 Cal. App. 4th

1383, 1388, 77 Cal. Rptr. 2d 383, 385 (1998) (internal citations omitted), *citing Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482, 199 Cal. Rptr. 613, 622 (Ct. App. 1984), *disapproved of on other grounds by Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 765 P.2d 373 (1988); *see also Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613, 119 Cal. Rptr. 646, 650–51 (Ct. App. 1975), *cited in Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*, No. D063450, 2014 WL 2770082, at *5 (Cal. Ct. App. June 19, 2014) (unpublished).

The two contracts signed by the parties together govern Plaintiff's relationship with Armada and TP-Link. Together, these two express contracts provide that Plaintiff, through Armada, provides certain technical services to TP-Link. Plaintiff signed an agreement with Armada to provide Plaintiff's services to TP-Link.[1] The scope of Plaintiff's services was specified in a "work assignment", which was apparently acknowledged in Armada's contract with Plaintiff. He cannot then assert that an implied employment contract exists between him and TP-Link with different terms.

In fact, Plaintiff agreed he would not be an employee of "Client" (TP-Link). **Ex. B, p. 2.** And the contract between Armada and TP-Link governs how people such as Plaintiff may become employees of TP-Link. **Ex. A.**

This conclusion is supported by the fact that both express contracts contain merger or integration clauses. Generally, a merger or integration clause precludes parties from asserting there was an implied contract. See *Malmstrom v. Kaiser Aluminum & Chem. Corp.* 187 Cal.App.3d 299, 315 (1986) (in light of the merger clause, the court found that the employment contract was

---

[1] Specifically, Plaintiff's contract with Armada provides: "Whereas Armada's business is locating technical services personnel for various clients, including the client (hereinafter "Client") listed in any purchase order (exhibit A) executed by Armada and Supplier and attached to this Agreement, to provide technical services to Client according to the Client's specifications." **Ex. B.**

9

integrated and prevented the plaintiff from showing that an implied agreement terminable for cause existed), *cited in Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*, 2014 WL 2770082, at *5 (Cal. Ct. App. June 19, 2014) (unpublished).

On this basis alone, Count III is devoid of any legal merit.

### B. Armada is not a stranger to the contracts.

Alternatively, Defendant Armada argues that even assuming Plaintiff had an implied contract with TP-Link, Armada was not a "stranger" to the contract because it had its own contracts governing the services provided by Plaintiff and had a financial interest in Plaintiff's "implied contract" with TP-Link. The Court agrees.

"The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 52–53, 204 Cal. Rptr. 3d 302, 312–13 (Ct. App. 2016), citing *Applied Equipment,* 7 Cal.4th at pp. 513–514, 28 Cal.Rptr.2d 475, 869 P.2d 454; *See also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514, 869 P.2d 454, 459 (1994) ("However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract.").

Here, Defendant Armada was in a contractual relationship with both Plaintiff and Defendant TP-Link regarding the services provided by Plaintiff to Defendant TP-Link. Defendant Armada agreed to procure and provide Plaintiff's services as an iOS developer for Defendant TP-Link. Plaintiff, through his company Loitery, LLC, agreed to provide his services in furtherance of that contract with TP-Link. Therefore, the Court concludes that Defendant Armada was not a

"stranger," and had a legitimate interest in the scope of the Plaintiff's services for TP-Link or the performance provided by Plaintiff to TP-Link. Therefore, Armada, as a party to the contracts, could not "interfere" with them as a matter of law.

For these two alternative reasons, **Count III** is **DISMISSED WITH PREJUDICE.**

### III. Count V: Breach of Contract.

Plaintiff asserts that Defendant Armada breached its contract with Plaintiff by furnishing the background check results to TP-Link and by "firing" Plaintiff. Initially, the complaint is unclear which contract Defendant alleges Plaintiff breached. However, Plaintiff clarifies in his response that he is not pursuing a claim for breach of the express contract, and instead asserts that Defendant Armada breached an "implicit employment contract" with Plaintiff, in his individual capacity. **Doc. 13, p. 9.** The Court concludes this claim fails as a matter of law because, as explained above, an implied employment contract cannot exist where there is an express contract (with a merger clause).

Furthermore, Loitery, LLC signed the express contract with Defendant Armada. Therefore, Defendant does not have standing to bring a claim for breach of the express contract. .

For these reasons, **Count V** is **DISMISSED WITH PREJUDICE.**

### IV. Count VI: Unconscionable Business Practices.

Plaintiff appears to argue that Defendant Armada engaged in "unconscionable business practices" by "firing" him in violation Cal. Lab. Code. 432.7(a). Plaintiff does not allege any other basis for the alleged "unconscionable business practice."

As explained above, Defendant Armada did not violate Cal. Labor. Code. 432.7(a) by "firing" (or terminating the contract) because of pending charges. Because there appears to be no

other alleged basis for this claim, Count VI also fails as a matter of law. Therefore, **Count VI** is **DISMISSED WITH PREJUDICE.**

V.     **Count VII: Conspiracy.**

Plaintiff pled a conspiracy claim against Armada and TP-Link. Civil conspiracy is not a standalone cause of action under either California or New Mexico law. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id.* 7 Cal 4th at 511. Moreover, "there is no cause of action for civil conspiracy to breach a contract." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 5000237, at *5 (N.D. Cal. Nov. 21, 2008), *citing Mintel Learning Tech., Inc. v. Beijin Kaidi Educ. & Tech. Dev. Co*, 2007 WL 2288329 at *5 (N.D. Cal. 2007) (applying California law). Rather, a stand-alone conspiracy claim must be dismissed and "the civil conspiracy allegations must be separately pled as to each of the substantive causes of action." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007), *citing Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F.Supp.2d 941, 947-48 (N.D. Cal. 2003).

Here, Plaintiff alleges that all Defendants conspired to illegally terminate him. The only predicate tort or statutory offenses alleged against the Armada Defendants have been dismissed. *See, e.g., Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935–36 (N.D. Cal. 2015); *See also PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *8 (N.D. Cal. June 7, 2012); *Kelly v. Mortgage Electronic Registration Systs., Inc*., 642 F.Supp.2d 1048, 1058 (N.D. Cal. 2009). Moreover, to the

extent Plaintiff alleges a conspiracy to breach contracts, Defendants cannot conspire to breach their own contracts. Therefore, the Court **DISMISSES WITH PREJUDICE Count VII**.

**IT IS THEREFORE ORDERED** that the Armada Defendant's motion to dismiss is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order; and

**IT IS FINALLY ORDERED** that the **Counts I, III, V, VI,** and **VII** are dismissed **WITH PREJUDICE** as to all Armada Defendants pursuant to Fed. R. Civ. P. 12(b)(6).

_____
CHIEF UNITED STATES DISTRICT JUDGE