# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MATTHEW J. CHANNON,

      Plaintiff,

      v.                                    No. 18-CV-596-WJ-KK

JEFF TAVANGAR, SHELLEY BACA,
JENNIFER IRELAND, ARMADA GROUP, INC.,
NATALIE GANN, and TP-LINK RESEARCH
AMERICA CORPORATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT TPRA'S MOTION TO DISMISS

THIS MATTER comes before the Court upon a Motion to Dismiss filed on May 20, 2019 by Defendant TP-Link Research America Corporation ("TPRA"). **Doc. 48.** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is granted.

## BACKGROUND

This case arises from a staffing agreement for technical consulting services, in which Plaintiff alleges that he was unlawfully terminated. This case is before the Court on diversity jurisdiction. The Complaint asserts numerous claims against several defendants, including Defendant TPRA, who filed this motion. Armada Group, Inc. ("Armada"), which has already been dismissed from this case, is a staffing agency that locates individuals who provide technical services and provides these individuals to Armada's clients, which are often technology companies. Defendant TPRA is a technology company that develops, among other things, software for computer networking equipment. According to the complaint, on June 25, 2015,

Armada signed an agreement with Plaintiff Matthew Channon's company, Loitery LLC, under which Plaintiff's company was to provide services for TPRA. At that time and at Armada's request, Plaintiff agreed to undergo a background check. Plaintiff claims he began performing services for TPRA on or about June 25, 2015, while his background check was still pending.

In early July, during the federal portion of the background check, Armada learned that Plaintiff was facing pending felony charges for wire-fraud in the United States District Court for the District of New Mexico. Armada provided this background information to TPRA as agreed between the parties. On July 13, 2015, TPRA advised Armada of its desire to terminate its contract with Armada regarding Plaintiff's services, effective July 14, 2015. *See* Doc. 10-4. The termination of that agreement was effective July 14, 2015. Complaint, ¶¶ 32-34. After TPRA terminated its contract with Armada, Armada also terminated its agreement with Plaintiff.

Plaintiff was subsequently convicted of five counts of wire fraud and sentenced to one year and one-day imprisonment. Complaint, ¶ 14; see also, Doc. 25, p. 1 (Plaintiff "pled not guilty to, and was later convicted of, five counts of Wire Fraud in this Court"); Doc. 45, p. 2, fn 1 (granting request for judicial notice of Plaintiff's convictions felony criminal charges pending against him).

Plaintiff filed this Complaint *pro se* on June 26, 2018, and was granted leave to proceed *in forma pauperis*, alleging that he was fired for having pending criminal charges; that all Defendants were aware of these charges when they decided to terminate him; and that his termination was unlawful. The Complaint alleges the following counts against TPRA:

Count 1 – Violation of California Labor Code 432.7(A);

Count 2 – Interference with Contractual Relations;

Count 4 – Breach of K; and

Count 7 – Civil Conspiracy

Defendant TPRA moves to dismiss all of these claims. Plaintiff has not filed a response. Under this Court's local rules, failure to file a response to a motion "constitutes consent to grant the motion." D.N.M.L-R Civ. 7.1(b). The Court may dismiss a complaint for failure to file response where it considers only defendants' arguments and the complaint's allegations. *Giummo v. Olsen*, 701 F.App'x 992, 925 (11th Cir. 2017; *see Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003) (district court erred by dismissing complaint for failure to state claim merely because plaintiff failed to file response to motion to dismiss that was required by local rules.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### II. Analysis.

#### A. Count 1: Claim for Violation of California Labor Code 432.7(a)

Defendant moves for dismissal of Count 1 because the California Labor Code does not prohibit an employer from inquiring into, or acting on, pending criminal charges for which an employee is subsequently convicted. Section 432.7(a) provides that an employer may not utilize

(including in hiring or termination) any record of arrest or detention that did not result in a conviction. This section also provides: "Nothing in this section shall prevent an employer from asking an employee or applicant for employment about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending trial." Section 432.7(a). *Pitman v. City of Oakland* reasoned that an individual only has a cause of action under this section if the arrest ends up as a non-conviction. 197 Cal. App. 3d 1037, 1044, 243 Cal. Rptr. 306, 309 (Ct. App. 1988). This means that an individual does not have a cause of action when, as here, he is terminated while charges are pending and he is ultimately convicted. *Id*.; *Corona v. Target Corp*., 2010 WL 3221866, at *2 (N.D. Cal. Aug. 13, 2010) (court noted "if a conviction results, then plaintiff's claim will be dismissed"); *Pierce v. Kiesewetter*, 2007 WL 4427445, at *6 (Cal. Ct. App. Dec. 19, 2007) (unpublished) (plaintiff unable to survive summary judgment where evidence shows arrest ultimately led to conviction, even though plaintiff was terminated before he was convicted); *Payne v. Farmers Ins. Co.,* 2015 WL 7354436, at 4 (Cal. Ct. App. Nov. 20, 2015) (same). This is based on the purpose of the statute, which is to protect individuals who were not convicted of a crime. *Piutau v. Fed. Express Corp*., 114 F. App'x 781, 782 (9th Cir. 2004) ("The statute denies protection to employees who are convicted of a crime").

Here, Plaintiff was convicted of several counts of wire-fraud after he was terminated. Therefore, as this Court has already ruled on three separate occasions, Plaintiff's Count I for alleged violation of Cal. Lab. Code. 432.7(a) fails to state a claim as a matter of law because Plaintiff was convicted after he was terminated. *See* Doc. 25 at 6-7 ("Plaintiff admits in his complaint that he was convicted after he was terminated. Therefore, the Court concludes that Plaintiff fails to state a claim as a matter of law for Count I"); Doc. 44 at 4-6 (Defendant Gann

cannot be held liable "because Plaintiff was convicted after he was terminated"); and Doc. 48 at 3-4. Count I will be dismissed.

B.     Count 2: Interference with Contractual Relations

In Count 2, Plaintiff claims TPRA intentionally interfered with the contract between Armada and Plaintiff by "terminating him" (i.e. by terminating TPRA's contract with Armada). Defendant contends that because TPRA was an interested party to the contract, TPRA could not "interfere" with the contract as a matter of law, and, thus, Count II must be dismissed as to TPRA.

Under California law, the elements of a cause of action for intentional interference with contractual relations are:

(1) the existence of a valid contract between the plaintiff and a third party;

(2) the defendant's knowledge of that contract;

(3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

(4) actual breach or disruption of the contractual relationship; and

(5) resulting damage.

*Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 997 (Ct. App. 2018).  However, the tort duty not to interfere with the contract falls only on strangers to the contract; that is, "interlopers who have no legitimate interest in the scope or course of the contract's performance." *Popescu v. Apple, Inc.*, 1 Cal. App. 5th 39, 52–53 (Ct. App. 2016), citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513–514 (1994); *see also, PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007). A "stranger" or "outsider" is defined as one with "no legitimate social or economic interest in the contractual relationship." *Applied Equip.*, 7 Cal. 4th at 513-514. If a contract expressly contemplates and depends upon a non-contracting party's performance, the non-contracting party has an economic interest in that contract and cannot be liable for interference

with its execution. *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 58, 65 (2007); *see also, Blantz v. California Dep't of Corr. & Rehab.*, 2017 WL 2962019, at \*8 (Cal. Ct. App. July 12, 2017) (unpublished) (dismissing intentional interference claim by plaintiff who was placed with defendant company through a staffing agency, finding company was not a "stranger" to the contract between the plaintiff and the staffing agency, even though company was not a direct party to the contract). Here, TPRA was not a "stranger" to the contract between Plaintiff and Armada. The contract between Plaintiff and Armada covered the scope and performance of the services which Plaintiff provided to TPRA. TPRA thus had a legitimate economic interest in Plaintiff's contract with Armada. Based on that interest, TPRA had an interest in the continuation of that contract and so TPRA could not as a matter of law interfere with the contract. Therefore, Count 2 will be dismissed.

C.    Count 4: Breach of Contract

Plaintiff asserts that TPRA breached its "contract" with Plaintiff when TPRA "fired" him. Plaintiff's claim fails because he did not have a valid contract—either express or implied—with TPRA, and, thus there was no contract to breach. The Court agrees with the reasons given by Defendant.

First, Plaintiff admits he did not have an express contract with TPRA. Complaint, ¶ 19 (describing the employment arrangement with Armada as a "corp-to-corp" contract with Plaintiff's company); *see also* Doc. 25, p. 7 ("Plaintiff does not allege that there was a written contract between him and TP-Link").

Second, as this Court has previously determined, there was also no implied contract between TPRA and Plaintiff. See Doc. 25, pp. 8-10 (Plaintiff's claim fails "because he has not shown that there was a valid implied contract between Plaintiff and TP-Link"). In finding no

implied contract existed between TPRA and Plaintiff, this Court correctly relied on several California courts, which hold, "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. The express term is controlling even if it is not contained in an integrated employment contract." *Halvorsen v. Aramark Unif. Servs., Inc.*, 65 Cal. App. 4th 1383, 1388 (1998) (internal citations omitted), citing *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482 (Ct. App. 1984); *see also Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (Ct. App. 1975).

In granting Defendant Armada's motion to dismiss, the Court also found that the two contracts signed by the parties in this case together govern Plaintiff's relationship with Armada and TPRA. See Doc. 25, p. 9. Together, these two express contracts provide that Plaintiff, *through* Armada, would provide certain technical services to TPRA. Plaintiff signed an agreement with Armada to provide such services. A "work assignment," which was  acknowledged in Armada's contract with Plaintiff, specified the scope of Plaintiff's services.  In the face of these express contracts, Plaintiff cannot assert that an implied employment contract also existed between him and TPRA with different terms.

The fact that both express contracts contain merger or integration clauses further supports this conclusion since a merger or integration clause generally precludes parties from asserting there was an implied contract. *See Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal. App. 3d 299, 315 (1986) (in light of the merger clause, the court found the employment contract was integrated and prevented the plaintiff from showing an implied agreement terminable for cause existed), cited in *Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*, 2014 WL 2770082,

at *5 (Cal. Ct. App. June 19, 2014) (unpublished). Since Plaintiff did not have an express or implied contract with TPRA, Plaintiff's breach of contract claim against TPRA fails as a matter of law, and Count 4 will be dismissed as well.

### D. Count 7: Civil Conspiracy

Finally, Defendant TPRA contends that Plaintiff's claim for civil conspiracy is not a standalone claim and where other claims are dismissed, Count 4 must be dismissed as well.

Civil conspiracy is not a standalone cause of action under either California or New Mexico law. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510–511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id*. at 511.

A stand-alone conspiracy claim must be dismissed and "the civil conspiracy allegations must be separately pled as to each of the substantive causes of action." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ*., 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007), citing *Accuimage Diagnostics Corp. v. Terarecon, Inc*., 260 F.Supp.2d 941, 947-48 (N.D. Cal. 2003). Here, Plaintiff alleges violations of Section 432.7(a); interference with contractual relations and breach of contract. The Court has concluded that these three claims, which constitutes all the claims alleged against Defendant TPRA, must be dismissed—and thus the only remaining claim against Defendant is civil conspiracy. Because conspiracy is not a standalone tort, no predicate tort exists on which Plaintiff may base his wholly derivative conspiracy claim, and therefore Plaintiff's Count 7 for civil conspiracy must also be dismissed.

**THEREFORE,**

**IT IS ORDERED** that Defendant TPRA's Motion to Dismiss (**Doc. 48**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order, and Defendant T-P Link Research America Corporation is hereby DISMISSED as a Defendant in this case;

**IT IS FURTHER ORDERED** that Counts 2 and 4 (Interference with Contractual Relations and Breach of Contract, respectively) are DISMISSED WITH PREJUDICE; and Counts 1 and 7 (Violation of California Labor Code 432.7(A) and civil conspiracy, respectively) are DISMISSED WITH PREJUDICE as to Defendant TPRA.[1]

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Counts 1 and 7 are alleged against all Defendants, while Counts 2 and 4 are asserted only against Defendant TPRA.